UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RODGER BOX,

    Plaintiff,

  v.

PAUL MIOVAS, et al.,

    Defendants.

Case No. 12-cv-04347-VC (PR)

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 51

   Plaintiff Rodger Box has filed a complaint under 42 U.S.C. § 1983 against the City of Concord and employees or former employees of the Concord Police Department. The defendants have filed a motion for judgment on the pleadings, arguing that Box's claims are barred from federal review by *Heck v. Humphrey*, 512 U.S. 477 (1994). As discussed below, the Court grants the motion.

## PROCEDURAL BACKGROUND

   Box was convicted of resisting, obstructing or delaying a peace officer in the performance of his or her duties and appealed his conviction. On August 17, 2012, Box filed his federal complaint based on events that occurred during his arrest. On April 8, 2013, this case was stayed pending Box's direct appeal pursuant to a stipulation between the parties. *See* Dkt. No. 38. On February 6, 2014, in a written opinion, the Appellate Division of the Contra County Superior Court upheld Box's conviction. Defs' Ex. C, *People v. Box*, Appellate Case No. 5-120866-9. On August 26, 2014, Box notified the Court that the California Supreme Court had denied his petition for a writ of habeas corpus. *See* Dkt. No. 46. On September 30, 3014, the Court lifted the stay and issued on order to show cause why the case should not be dismissed. On November 26, 2014, the defendants filed a motion for judgment on the pleadings, which the Court now addresses.

**DISCUSSION**

## I. Legal Standard

A court analyzes a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same standards applicable to a Rule 12(b)(6) motion. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999); *ChriMar Systems, Inc. v. Cisco Systems, Inc*., __ F. Supp. 3d __, 2014 WL 5477666, at *2 (N.D. Cal. 2014). However, allegations that contradict matters properly subject to judicial notice need not be accepted as true. *Id.*

## II. Allegations in the Complaint

Box alleges the following in his complaint:  On August 21, 2010, at approximately 11:45 p.m., Box had a verbal argument with his wife.  Unknown to Box, someone called the Concord Police Department and reported that Box was punching his wife.  Box was awakened by a knocking on his front door.  He got out of bed, put on pants, went downstairs and opened the door. On opening the door, Box saw three people in dark clothing, which turned out to be police uniforms.  Officer Paul Miovas told Box, "Step outside, please."  Box responded, "No thanks," and closed the door.  Box was relocking the door when Officers Miovas, Kevin Mansourian, and Michelle Ligouri burst through the door.  Box believes Ligouri hit him with a baton, which broke his nose.  Mansourian fired his taser and struck Box in the chest.  At this point, Box suffered a temporary loss of consciousness or memory.

Box next remembers being face down on the ground with his arms protecting his head while being punched and kicked in the head by the officers.  He was hit in the back by a baton which broke two ribs.  His pants were pulled down and he was stunned on his back and sides by taser discharges.  Box was unable to release his hand that was gripping Mansourian's boot due to the taser discharges.  Box was stunned by a kick to his face by Mansourian and he was then handcuffed.  While Box was handcuffed and face down on the floor, Savage applied another figure four leglock.  After Box was handcuffed, the officers called Emergency Medical Services

2

1    and Box was taken to John Muir Medical Center by ambulance.  The officers then searched

2    throughout his home.

3            Based on these allegations, Box asserts the following claims against the officers: (1) under

4    42 U.S.C. § 1983, Fourth and Fourteenth Amendment violations for unreasonable search and

5    seizure; (2) assault; (3) battery; and (4) false imprisonment.  Box asserts the following claims

6    against the City of Concord: (1) Section 1983 liability under *Monell v. Dep't of Social Servs.*, 436

7    U.S. 658 (1978), based on the City's policies or customs of inadequately supervising and training

8    its police officers and the City's failure to exercise reasonable care in hiring its officers; and

9    (2) respondeat superior liability for assault, battery and false imprisonment committed by the

10   officers.

**III. The Record From Box's Criminal Trial**

12           The following is a description of the criminal proceedings that led to Box's conviction, and

13   the evidence adduced in those proceedings, of which the Court takes judicial notice pursuant to the

14   parties' requests.

15           On October 7, 2010, the Contra Costa County District Attorney's Office filed two criminal

16   charges against Box: (1) violation of California Penal Code § 242/243(c)(1), battery on a spouse;

17   and (2) violation of California Penal Code § 148(a)(1), resisting, obstructing or delaying a peace

18   officer.  Defs. Ex. A, Crim. Complaint.

19           In April 2012, Box's criminal case was tried for ten days before a jury in Contra Costa

20   County Superior Court.  All of the defendants testified, with the exception of Chief David

21   Livingston.  Box also testified.

22           The relevant trial testimony of the officers was as follows:  Concord police officers were

23   dispatched to Box's apartment based upon a report that a male was beating a female and there was

24   a possible domestic violence situation.  All the officers were in full police uniforms.  When

25   Miovas came to Box's door, he heard a female inside the apartment crying.  After Miovas asked

26   Box to come outside for questioning and Box replied, "No thanks" and tried to close the door,

27   Miovas kicked the door open so that he could check on the welfare of the female inside.

28           Miovas testified that Box appeared angry, took a fighting stance and advanced toward the

United States District Court
Northern District of California

officers with his hands up.  Miovas grabbed Box's throat area and used a leg sweep takedown, causing Box to fall to the ground.  Box got up and was tasered by Mansourian.  This had no effect on Box, so Mansourian tackled Box to the ground.  Miovas, Mansourian and Ligouri testified that they attempted to put Box in handcuffs and repeatedly ordered him to stop resisting, but he would not comply.  Box was so resistant that Miovas requested more units to help subdue Box.  Officers Krista Sansen, Jeffrey Krieger and David Savage arrived in response to Miovas' request.

Sansen testified that, when she arrived at the scene, she observed Box thrashing, kicking and not complying with the officers' orders to give them his hands so he could be handcuffed. Krieger testified that Box displayed extreme resistance and never cooperated with the handcuffing. At one point, Box grabbed Mansourian's foot.  Mansourian testified that he was fearful that his leg would be broken or injured by Box.  Box kicked out, causing Ligouri to fall backward.  Savage testified that, as soon as he walked through the door, Ligouri flew back toward him because Box had kicked her off him.

Box testified that he heard people yelling, "stop resisting," but he did not comply because he was trying to protect himself from kicks and punches and was thinking of his survival.

The exact timing of when Box was handcuffed is unclear from the testimony.  Miovas testified that, after he delivered the second heel strike to Box, the officers were able to handcuff Box with his arms behind his lower back, although he continued to kick Ligouri so that Savage applied and reapplied the figure four leg locks.  Ligouri stated that, while she was trying to apply a figure four leg lock on Box, she was only able to put one handcuff on him before he kicked her away.  Savage testified that, when he arrived, Box was not in handcuffs, but once Savage reapplied the figure four hold on Box, the officers were able to handcuff him and take him out of the apartment under arrest.

As relevant here, the trial court gave the following instructions to the jury:

> Defendant is charged in Count Two with resisting, obstructing or delaying a peace officer in the performance or attempted performance of his or her duties, in violation of Penal Code Section 148(a)(1).  To prove that the defendant is guilty of this crime, the People must prove that:

(1) a peace officer was lawfully performing or attempting to perform his or her duties as a peace officer;

(2) the defendant willfully resisted, obstructed or delayed the peace officer in the performance or attempted performance of those duties;

. . .

The duties of a peace officer include investigating reports of domestic violence and detaining and/or arresting persons involved in such criminal activity, provided any such detention and/or arrest is lawful, . . . . A peace officer is not lawfully performing his or her duties, if he or she unlawfully detains or arrests someone or uses unreasonable force in effectuating such detention or arrest.

. . . The People contend that the defendant resisted, obstructed and/or delayed one or more peace officers involved in this case, by not complying with their demand to exit his apartment for questioning, and/or by blocking or attempting to block the entrance to his apartment for this and other investigatory purposes.  And/or by taking  a fighting stance and/or rushing them in order to prevent their entrance, and/or by refusing to abide by their requests that he not resist them and allow them to handcuff him.

You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts, and you all agree on which act was committed.   And, of course, you cannot find the defendant guilty unless you also all agree that any such act constituted resisting, obstructing . . . or delaying a peace officer in accordance with the instructions given to you.

To prove the commission of the crime charged in Count Two, the People have, among other things, the burden of proving beyond a reasonable doubt, that the peace officer was lawfully performing his or her duties as a peace officer.  If the People have not met this burden, you must find the defendant not guilty of that crime.  A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone, or using unreasonable or excessive force, when making or attempting to make an otherwise lawful arrest or detention.

. . .

Now, a person has a constitutional right to refuse to consent to the entry into his home by a police officer without a warrant, even if under the circumstances, the officer may make a lawful entry without such warrant.  And such refusal, without more, does not constitute resisting, obstructing or delaying a peace officer.  However, such mere refusal must be distinguished from affirmative acts taken to impede or prevent entry.  And the latter, if any are found by you to have occurred in this case, may constitute resisting, obstructing or delaying a peace officer in the lawful discharge of his or her duties, if all the elements of that crime have been proven.

Defs Ex. B., Reporter's Transcript ("RT") at 1336-43.

United States District Court
Northern District of California

The day after the jury received these instructions, it submitted several written questions to the court, seeking, among other things, clarification of the § 148(a)(1) jury instruction.  RT at 1418-26.  In particular, the jury asked: "If someone lawfully makes a request and the person refuses, that is resists, but then the situation turns unlawful, is the person guilty due to the original resistance or not guilty due to the future unlawful actions?"  RT at 1422.  The trial court delivered the following clarification to the jury:

> The People contend that the defendant violated Penal Code Section 148(a)(1) in several different and distinct ways, which I have related to you in the instruction entitled, "Resisting a Peace Officer."  In that instruction, as you will recall, I told you the various ways in which the People are contending there was a violation of Penal Code Section 148(a)(1).  If, in accordance with all the instructions that I have given you, you find that the defendant violated Penal Code Section 148(a)(1) in any one of these ways, a verdict of guilty is warranted.  Even though, because of the involvement of unlawful conduct on the part of the police or otherwise, you may not all—you may not believe the defendant guilty of any of the other ways contended.

Plaintiff's Ex. D; RT at 1438-39.

After receiving this instruction, the jury found Box guilty of violating § 148(a)(1) and could not reach a verdict on the spousal battery charge.  RT at 1452-53.  The court sentenced Box to 180 days in the county jail, with a three-year probation term.  RT at 1488-89.

Box appealed his conviction.  On February 6, 2014, the Appellate Division of the Contra Costa County Superior Court affirmed the verdict.  Defs' Ex. C.  Box petitioned the California Supreme Court for review, which was denied on May 14, 2014.

### IV. Opinion of Appellate Division of Contra Costa County Superior Court

Box appealed on the ground that the trial court erred by failing to give the jury his proposed instruction that the act of closing a door on an officer who requests entry without a warrant cannot constitute resisting, delaying or obstructing an officer.  *People v. Box*, at 1.  Box argued that, from discussions with jurors after trial, he determined that the jurors based their finding of guilt on the fact that he closed the door on the officers and that it was reversible error to permit the jury to base their judgment on that conduct.  *Id.*

The court explained that jurors' statements are not admissible evidence and, thus, the

United States District Court
Northern District of California

6

appeal had to be decided without any assumption that the jury's verdict was based on Box's

closing the door. *Id.* at 1-2.[1]  The appellate court noted that Box did not dispute the following:

(1) the police had ample exigent circumstances to justify a warrantless entry into Box's apartment

because a woman inside was crying and screaming for help; (2) the unanimity jury instruction

permitted a finding of guilt based on other conduct unrelated to Box's closing the door on the

officers—not complying with the officers' demand to exit his apartment for questioning, taking a

fighting stance, rushing the officers to prevent their entrance, and refusing to follow commands to

stop resisting as the officers tried to arrest him; and (3) substantial evidence supported a § 148

conviction based on the other conduct.  *Id.*  The court further found that, even if the jury convicted

on the basis of Box closing the door, his slamming the door on the officers and affirmatively

obstructing and delaying their legal entry into his residence constituted grounds for a conviction.

*Id.* at 2.  Based on the evidence that supported a guilty verdict on all the grounds set forth in the

jury instructions, the court affirmed Box's conviction.  *Id.* at 3.

**V. Discussion**

As stated above, the defendants argue all of Box's claims are barred by *Heck v. Humphrey*.

To recover damages for an allegedly unconstitutional conviction or imprisonment, or for

other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a

42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-487.  A claim for damages bearing that relationship to a conviction or

sentence that has not been so invalidated is not cognizable under § 1983.  *Id.* at 487.

When a state prisoner seeks damages in a § 1983 suit, the district court must therefore

consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

---

[1] Likewise, juror statements are not admissible in federal court.  *See United States v. Rutherford*, 371 F.3d 634, 640 (9th Cir. 2004) (juror testimony regarding deliberations not admissible under federal rules of evidence unless it concerns "facts bearing on extraneous or outside influences") (citing Federal Rule of Evidence 606(b)).

demonstrate that the conviction or sentence has already been invalidated. *Id.* at 487. But if the district court determines that the plaintiff's action, if successful, would not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed. *Id.* at 487 & n.8.

### A. Fourth Amendment Claims—Unlawful Entry Into Home and Unreasonable Search After Arrest

In his opposition, Box argues that the officers' entry into his residence was unlawful because they did not follow the knock and announce rule. However, the jury was instructed on when a warrantless entry into a residence was unlawful and its determination that Box was guilty of § 148(a)(1) based on events that occurred after the officers entered his residence, necessarily required a finding that the officers' entry was lawful. A judgment in favor of Box on this claim, therefore, would imply the invalidity of his conviction under § 148(a)(1). Accordingly, this claim is barred by *Heck*.

Next, Box argues that, after his arrest, unnamed officers unlawfully searched his residence. The defendants argue that this claim is barred by *Heck*, and also that is not cognizable. An unreasonable search claim would likely not be barred by *Heck* because the events giving rise to it occurred after the events involving Box's § 148(a)(1) conviction. But this claim is not cognizable because Box does not include enough detail about it in his complaint. Indeed, he only alleges that the search was conducted by "Doe" defendants. Accordingly, this claim is dismissed as well.

### B. Fourth Amendment Claim—Excessive Force

In California, a conviction for resisting, obstructing or delaying a peace officer pursuant to § 148(a)(1) may be lawfully obtained only if the officers do not use excessive force in the course of arresting the defendant. *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) (*en banc*). However, *Heck* does not bar a § 1983 action for excessive force based on officers' conduct after the plaintiff stopped resisting. *Id.* Therefore, a claim for use of excessive force during an arrest may not necessarily imply the invalidity of the arrest or conviction and may not be barred by *Heck*. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). In *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011), the court held that *Heck* does not bar recovery where a guilty

plea to § 148 (a)(1) and a § 1983 excessive force claim "are based on different actions during 'one continuous transaction.'"  In *Beets v. County of Los Angeles*, 669 F.3d 1038, 1045 (9th Cir. 2012), decided one year after *Hooper*, the court held that *Heck* barred a § 1983 excessive force claim where the deputy's allegedly excessive force and the crime were part of a single act and the jury found that the deputy did not use excessive force.  In particular, the *Beets* court noted, "a jury's verdict necessarily determines the lawfulness of the officers' actions throughout the whole course of the defendant's conduct, and any action alleging the use of excessive force would necessarily imply the invalidity of his conviction." *Id.*

The facts in this case are like those in *Beets*.  Box was found guilty of violating § 148(a)(1) by a jury.  The jury was instructed that it could convict Box only if it found the police were acting lawfully, and lawful was defined as the absence of excessive force when making an otherwise lawful detention or arrest.  Nor does the evidence that resulted in Box's conviction suggest that officers used excessive force after he stopped resisting.  And the conviction still stands. Therefore, pursuant to *Beets*, Box's claim for excessive force is barred by *Heck*.

Box argues here, as he did on appeal, that the jurors' statements after trial show that they found him guilty of violating § 148(a)(1) only because he closed the door on the officers and, thus, his excessive force claim based on events that occurred subsequent to that are not barred by *Heck*.  In support of this argument, Box submits the declaration of his attorney who states that he spoke to jurors after the trial and they told him they convicted Box based on his closing the door. The Court cannot consider this declaration because juror statements about their deliberations are not admissible.  *See* Fed. R. Evid. 606(b).

Box also ignores the state Appellate Division's decision that substantial evidence supported a § 148(a)(1) conviction based on his conduct that occurred after the officers entered his apartment, such as taking a fighting stance, rushing the officers to prevent their entrance, and refusing to follow the officers' commands to stop resisting as they tried to arrest him.  *See People v. Box*, at 1-3.

Accordingly, Box's excessive force claim is barred by *Heck*.

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.** *Monell* **Claim**

In Box's complaint, the *Monell* claim is premised upon the Concord Police Department's: (1) policy and/or custom of failing to exercise reasonable care in hiring its police officers, including the individual officers named as defendants; (2) policy and/or custom to inadequately train and supervise its police officers, including the individual officers named as defendants; (3) violation of its written policy regarding yearly taser use audits, thereby failing to adequately discourage constitutional violations by its police officers; (4) violation of its policy regarding use of force and offense reporting by allowing Officer Savage to avoid filing use of force and offense reports; and (5) encouragement of "rogue tasering." As a result of these policies and customs, the individual officers named as defendants allegedly believed their actions would not be properly monitored by supervisory officers and their misconduct would not be investigated or sanctioned.

The defendants argue that Box's *Monell* claim fails because he must first establish an underlying constitutional violation against the officers in question, which he cannot do because his constitutional claims against them are barred by *Heck*.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell*, 436 U.S. at 690. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A city or county cannot be liable for damages based on the actions of one of its employees unless the employee inflicted constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). This does not mean that the liability of municipalities or counties turns on the liability of individual employees; rather, "it is contingent on a violation of constitutional rights." *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). So, for example, a police department may be liable under § 1983 for damages caused by unconstitutional policies, notwithstanding the exoneration by qualified immunity of the individual officer whose

United States District Court
Northern District of California

1    actions were the immediate cause of the constitutional injury.  *Quintanilla*, 84 F.3d at 355-56; *see*

2    *also, Wallis v. Spencer*, 202 F.3d 1126, 1143-44 (9th Cir. 2000).  But where the conduct of

3    individual employees is found reasonable, the municipality or county cannot be liable, because no

4    constitutional violation occurred.  *Gregory v. County of Maui*,  523 F.3d 1101, 1109 (9th Cir.

5    2008) (where officers did not use excessive force in violation of 4th Amendment, claims against

6    the county also fail).

7              Because the *Monell* allegations in Box's complaint are sparse, it is difficult to discern the

8    basis of his claims for failure to exercise reasonable care in hiring, training and supervising.  To

9    the extent the *Monell* claim is predicated upon the individual officers' use of excessive force, it

10   fails because, as discussed above, *Heck* precludes Box from showing that any defendant officer

11   violated his constitutional rights by using excessive force.  *See Mancheno v. City of Orinda*, 2015

12   WL 632402, *6 (N.D. Cal. Feb. 13, 2015) (*Monell* claim failed because *Heck* prevented court

13   from concluding employee violated plaintiff's constitutional rights).  To the extent that the *Monell*

14   claim is based upon the allegation that the City violated its own policy by allowing Officer Savage

15   to avoid filing use of force and offense reports, it fails because this allegation does not state that

16   the City had a policy, practice or custom that caused the violation of Box's constitutional rights.

17   In fact, it implies the City had a policy requiring officers to file use of force and offense reports,

18   but Savage did not comply with that policy.  This cannot form the basis of a *Monell* claim.  *See*

19   *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (*Monell* liability may not be

20   predicated on isolated or sporadic incidents; "it must be founded on practices of sufficient

21   duration, frequency and consistency that the conduct has become a traditional method of carrying

22   out the policy").  To the extent that the *Monell* claim is based on the allegations that the Concord

23   Police Department encouraged "rogue tasering," or failed to follow its written policy regarding

24   yearly taser audits, it fails because, to assert that he suffered a constitutional violation, Box would

25   have to show that the individual officers' use of tasers on him constituted excessive force, which

26   would imply the invalidity of the § 148(a)(1) conviction.

27             Accordingly, judgment on the pleadings is granted to the defendants on the *Monell* claim.

28

**D. State Law Claims**

Citing *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1412 (2002) (applying state law analogue to *Heck* to bar assault, battery and false imprisonment claims because they arose from the same conduct as *Heck*-barred § 1983 claims), the defendants argue that Box's state law tort claims for assault, battery, false arrest and respondeat superior based upon these torts are barred.  They also argue that Box is precluded from asserting the state law claims because he did not present them to the City of Concord as required by California Government Code section 950.2.

Before suing a public entity or its employees for personal injury, a plaintiff must present written claims for damages to the public entity, within six months after their accrual date.  *Shirk v. Vista Unified School Dist.*, 42 Cal. 4th 210, 209 (2007).  Timely presentation is not merely a procedural requirement, but a condition precedent to the plaintiff's maintaining an action against the defendant.  *Id.*  Complaints that do not allege that the claim was timely presented or that compliance with the statute is excused are subject to dismissal.  *Id.*

Box does not address these arguments in his opposition and, therefore, must concede that judgment on the pleadings should be granted to the defendants on his state law claims.  The Court, therefore, grants judgment on these claims to the defendants.

**VI. Request for Leave to Amend Complaint**

In his opposition, Box requests leave to amend his complaint to name Michael Roberts as an additional defendant.  He also requests, if his claims are barred by *Heck*, that the Court order the unsealing of the jury contact information from his state court trial and contact the jurors "to verify the basis for Plaintiff's PC § 148(a)(1) conviction."

In his opposition, Box indicates that Michael Roberts is a police officer who was present during the events at Box's house, that Roberts observed Savage's actions and was aware of Savage's failure to file a use of force report.  As discussed above, judgment has been granted for the defendants on Box's claims based on the officers' alleged excessive force at his house and the *Monell* claim based on Savage's failure to file a use of force report.  The additional allegations that Roberts observed Savage's actions would not save these claims.

As discussed previously, juror testimony about the jury's deliberations is not admissible.

United States District Court
Northern District of California

1   *See United States v. Rutherford*, 371 F.3d 634, 640 (9th Cir. 2004); Fed. R. Evid. 606(b).

2   Therefore, Box's request for the unsealing of juror records is denied.  Because amendment would

3   be futile, the request for leave to file an amended complaint is denied.

### CONCLUSION

4

5       Based on the foregoing, the Court orders as follows:

6       1. The defendants' motion for judgment on the pleadings is granted.  Dkt. No. 51.

7       2. The Clerk shall enter judgment and close the file.

8       **IT IS SO ORDERED**.

9   Dated:  April 28, 2015

10

11                                              VINCE CHHABRIA
                                                United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California